UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIE WARREN

               Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY
DEPARTMENT OF PUBLIC WORKS, and County
Executive THOMAS R. SUOZZI, in his official capacity,
Highway Maintenance Supervisor JOHN GALLO,
in his individual and official capacity.

               Defendants.
------------------------------------------------------------X

**Docket No.:**

**ORIGINAL**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ APR 16 2009 ★
BROOKLYN OFFICE

**COMPLAINT**

09 1614
PLATT, J.
LINDSAY, M.J.

PLAINTIFF, WILLIE WARREN, by and through his attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON, as and for his complaint against the Defendants, states and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action seeking monetary relief (including past and on going economic loss), injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements, costs and fees for violations of the Plaintiff's constitutional and statutory civil rights, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended), 42 U.S.C §§ 1981, 1983 (including municipal liability and as per First and Fourteenth Amendment violations), and §1988 and New York State Executive Law § 296 et seq.

2. Specifically, the Plaintiff alleges that the Defendants, acting individually and collectively, did negligently, wantonly, recklessly, intentionally and knowingly seek to and

wrongfully deprive Plaintiff of equal terms and conditions of employment and retaliate against Plaintiff, by way of: committing and continuation of wrongful actions including selective enforcement, excessive scrutiny, chilling of public speech, deprivation of property rights, retaliation and creation of and continuation of a hostile work environment based on race and opposition to discriminatory practices based on race, color and retaliation.

3. Plaintiff further alleges that, the defendants, COUNTY OF NASSAU and NASSAU COUNTY DEPARTMENT OF WORKS, and their high-ranking officials and policymakers, have condoned, permitted and facilitated a pattern, practice, custom and policy of discrimination and retaliation – against Plaintiff, other minorities and employees employed by the COUNTY and DEPARTMENT OF WORKS – by routinely and systemically exhibiting deliberate indifference to the known, widespread discrimination and retaliation, by failing to adequately investigate numerous complaints of discrimination, failing to respond to or rectify situations that evidenced such discrimination and retaliation, using public employees jobs and threats to terminate employees as a form of coercion and intimidation and turning a blind eye towards overwhelming evidence of a deep-routed animosity towards, retaliation against and discrimination against, African-American employees and employees that seek to oppose discrimination/retaliation and/or speak out about matters of public concern.

4. Plaintiff alleges that the acts complained of in the proceeding paragraphs were done by defendants purposefully and with the intent to discriminate and retaliate against Plaintiff based upon his race, and color, and in retaliation for his opposing discriminatory practices and voicing speech of public concern and speech with respect to said systemic discrimination.

5. Said acts were done knowingly, purposely, and with all intentions of depriving Plaintiff of his right to be free of discrimination within his employment, taking away his employment and chilling his right to speak out on matters of public concern.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

7. This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

8. Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that Plaintiff's residence and the place where the unlawful employment practices complained of herein occurred, in the County of Nassau.

9. Prior hereto, on March 27, 2008, Plaintiff filed a Charge of Discrimination with New York State Division of Human Rights, which was dually filed with the Equal Employment Opportunity Commission ("EEOC"), Charge No.: 16G-2008-03189, against Defendants Nassau County and Nassau County Department of Works (herein "COUNTY" and "DEPARTMENT OF PUBLIC WORKS"), Thomas Suozzi and John Gallo alleging that he was forced from his employment without notice of any kind and not allowed to return for work until he was told he could come back, all in a discriminatory and retaliatory act to punish and silence Plaintiff.

10. On January 13, 2009, a *Notice of Right to Sue* was issued by the Equal Employment Opportunity Commission with regard to EEOC Charge No. 16G-2008-03189 (copy annexed hereto) was mailed to the Plaintiff. The *Notice of Right to Sue* was received by the Plaintiff on or about January 16, 2009, and files the within complaint within the statutory 90 day time frame for doing same.

## PARTIES

11. Plaintiff WILLIE WARREN (hereinafter "WARREN") is a forty-five-year-old African-American male and a citizen of the United States and of New York State. To date, Plaintiff has been employed by the County of Nassau and the Nassau County Department of Public Works for twenty-five (25) years.

12. At all times hereinafter mentioned, defendant, COUNTY OF NASSAU, (hereinafter COUNTY) was / is a municipal body of the State of New York, with offices of its Department of Law located at the County Executive Building, 1 West Street, Mineola, New York 11501. Said municipality exists and operates under and by virtue of the laws of the State of New York.

13. At all times hereinafter mentioned, defendant NASSAU COUNTY DEPARTMENT OF PUBLIC WORKS ("DEPARTMENT OF WORKS"), is a is a municipal division of Defendant COUNTY, empowered to enforce ordinances, rules and regulations for the COUNTY, its agencies and employees. It is charged with overseeing the implementation of and compliance with County, State and Federal rules, civil service rules, laws and regulations, and further charged with acting according to said rules, regulations and laws.

14. Defendant THOMAS R. SUOZZI (hereinafter "SUOZZI") is a white maile and is, and at all relevant times served as the County Executive of Defendant COUNTY. SUOZZI is the chief policymaker within the COUNTY, interacts with other COUNTY policymakers, and is charged with the duties of overseeing the COUNTY and its municipal divisions' implementation of and compliance with County, State and Federal rules, laws and regulations, and further charged with acting according to said rules, regulations and laws. At all times while serving as County Executive, SUOZZI was noticed about the systemic discrimination that occurred against Plaintiff and other

4

African-American employees and other employees by the COUNTY and DEPARTMENT OF WORKS, had the authority, power and capacity to end said systemic abuses, yet failed to do so.

15. Defendant JOHN GALLO, ("GALLO") is a white male, and at all times referenced in this complaint, served as the Highway Maintenance Supervisor for the DEPARTMENT OF PUBLIC WORKS. Upon information and belief, GALLO is a policymaker within the DEPARTMENT OF PUBLIC WORKS, interacts with policymakers, and is charged with overseeing and ensuring a non-discriminatory work environment, and is further charge with both the implementation of, and compliance with, County, State and Federal rules, laws and regulations, and is further charged with acting according to said rules, regulations and laws. While serving as DEPARTMENT OF WORKS' Highway Maintenance Supervisor, GALLO was noticed about the discrimination and retaliation inflicted against Plaintiff and was the source of some of said wrongful acts against Plaintiff. At all times he had the authority, power and capacity to end said discriminatory, retaliatory and violative abuses, yet failed to do so.

## FACTUAL ALLEGATIONS

16. On May 20, 1986, Plaintiff William Warren was hired as a laborer with the defendant Department of Public Works, and was promoted to the job title of Equipment Operator I the following year.

17. At all times during Plaintiff's now twenty-three (23) years of employment with the Department of Works, Plaintiff had performed his job in an above satisfactory manner, had maintained good attendance, and had a clean disciplinary record and good interpersonal relations with his co-workers.

18. Throughout the twenty-two years from 1987 through 2009, Plaintiff had inquired about, sought and put in for promotions to Equipment Operator II on a regular basis. Plaintiff had the skills, ability, seniority and qualifications for such a position, yet was denied said position or any other such promotion, while white individuals with less seniority and fewer qualifications were promoted. Instead, Plaintiff remained as an Equipment Operator I in the Highway Maintenance Yard of the Department of Public Works, from 1987 until his August, 2003 transfer to an Equipment Operator III.

19. In August of 2003, as a result of an alleged settlement of an action and claim of discrimination, Plaintiff was transferred to the DEPARTMENT OF PUBLIC WORKS' Hempstead Garage to the title of Equipment Operator III, to work as a Sweeper Driver. From said time (August 2003) until the present, Plaintiff experienced additional, further disparate treatment, harassment, continued denied promotions, and offensive racist comments by his new supervisor, based upon Plaintiff's race, color and opposing of discriminatory practices. Said new acts of discrimination and retaliation began to occur in August of 2003 — immediately after Plaintiff entered into the July 28th, 2003 Stipulation of Settlement – and said discriminatory and retaliatory acts against Plaintiff continue into the present, as alleged below.

20. On May 14, 2004, based on the events occurring since August of 2003, Plaintiff filed a charge of discrimination and retaliation with the New York State Division of Human Rights ("SDHR"), SDHR Charge Number 2-E-OR-043508032-E, which was dually-filed with the Equal Employment Opportunity Commission (EEOC), Charge Number 16G200404199. Thereafter, Plaintiff requested an Administrative Convenience Dismissal from the SDHR, with respect to his May 14, 2004 State Division Charge, and same was granted on June 19, 2006. Plaintiff further

requested and was granted a Right To Sue Letter for his May 14, 2004 EEOC Charge (Charge No. 16G200404199)

21. On or about July 2006 Plaintiff filed a Federal complaint in the Eastern District of New York under Docket # CV-06-3560 (JS)(MLO)

22. In that complaint, Plaintiff alleged among other things that he was victimized by discrimination and retaliation by the County of Nassau and its employees, agents, servants and assigns.

23. That action is still pending before the Honorable Joanna Seybert and upon information and belief is scheduled to go to trial in or about the calendar year of 2009.

24. Following the filing and commencement of discovery in the above referenced case, Plaintiff was subjected to a serious of wrongful discriminatory and retaliatory actions by Defendants including but not limited to GALLO.

25. In the early part of 2007, Plaintiff was subjected to having the lug nuts on his work vehicle loosened and or removed in an act of sabotage, retaliation and abuse.

26. Plaintiff reported this action taken against him, however Defendants COUNTY, DEPARTMENT OF WORKS and GALLO refused and failed to take any action, upon information and belief failed to conduct any meaningful investigation and never reported back to Plaintiff any actions which were taken or were to take place.

27. On or about, 2007 and 2008 Plaintiff complaints were routinely and systematically ignored and Defendants refusing to properly address the concerns of Plaintiff and other minority employees within the DEPARTMENT OF WORKS, while instead tacitly and directly perpetrating, allowing, encouraging unconscionable acts such as display of the *hangman's noose* and promoting

an unlawful discriminatory atmosphere in the workplace and a hostile work environment.

28. Plaintiff promptly reported and immediately brought the offensive and discriminatory act of displaying a hangman's noose to the attention of his supervisor, GALLO

29. No further action was taken by Defendants to address or remedy this incident, nor was Plaintiff offered any assurances that the party responsible for the chilling his speech and effecting this work place who displayed/committed this egregious and hateful act would be located and disciplined. Instead comments were made to Plaintiff that he should not be upset and that he should just ignore this symbol of abuse and racial terrorism.

30. While nothing was done to address the hangman's noose, on March 10, 2008, Plaintiff was sent home by Defendant GALLO without any notice or explanation and told that he could not come back *"until further notice"*. This action was clearly done in response to Plaintiff bringing facts to light about the hangman's noose, complaining about the ongoing abuse and opposing the regular abuse to which he was subject. The attempt of Defendants to silence Plaintiff and remove Plaintiff was carried out in a callous and abusive way, consistent with the manner in which Defendants had conducted themselves in dealing with Plaintiff ever since he sought to oppose all the discriminatory actions that were raised in every Division of Human Right Complaint and the Federal Complaint and in every complaint leveled since then.

31. Mr. Warren asked why he was being sent home and why he was being treated in this fashion and then wrote a letter asking what was this about and was not responded to in any way.

32. He was deprived of his employment and his pay. Mr. Warren was to have been paid his entire bi-weekly salary on March 27, 2008, however, he was not paid any part of his salary. In fact was told he was not being paid.

33. Due to this mental and actual retaliation and discrimination Plaintiff was forced to then pursue a disability claim and seek some form of compensation since his ability to make a living was taken from him. Despite his objections to being forced from his job the Defendants made no efforts to provide or accommodate him to allow him to remain employed and continue to be paid. Instead, Defendants summarily took his means of feeding his family and earning a living.

34. This action and this behavior by the County as a further act of retaliation and forced Plaintiff to file yet another complaint with the New York State Division of Human Rights. Even when Plaintiff sought to amend the pending complaint which was pending before the Federal Court to include these facts of open hostility and retaliation, Defendants would not consent to this amendment and forced the filing of this action in order to vindicate Plaintiff's rights.

35. As a result of the above referenced and ongoing actions of Defendants, the continuous and ongoing pattern and practice of abuse, discrimination, retaliation and denial of rights, denying promotions and advancements to the qualified, seasoned Plaintiff (based on race and retaliation) combined with the racist, hostile work environment, Plaintiff sustained severe, persistent and permanent emotional and psychological trauma and damages. As a result of the defendants' above referenced discrimination and harassment of Plaintiff, Plaintiff developed job-related mood disorders, and further developed anxiety, depression, insomnia, disrupted eating patterns, shortness of breath, severe headaches, and other such physical symptoms and ailments. Based on the job-related trauma suffered by Plaintiff, he has been required to pay the costs, expense, and energy involved in receiving diagnosis and regular treatment by a psychotherapist, and medication. Plaintiff's emotional and psychological trauma, from the defendants' conduct as described above, has put the Plaintiff at risk for severe additional, physical ailments, including: risk

of hypertension, potential coronary problems and migraine headaches.

## AS AND FOR A FIRST COUNT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

36. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 35 inclusive of this complaint, with the same force and effect as though herein fully set forth herein.

37. The defendants COUNTY OF NASSAU and DEPARTMENT OF PUBLIC WORKS, through their agents and employees, discriminated against the plaintiff in his employment, retaliated against Plaintiff in his employment, created a hostile work environment, and unequal terms and conditions of employment, as set forth in the preceding paragraphs.

38. Defendants lacked any business reason or justification for their aforesaid disparate treatment of Plaintiff and instead subjected Plaintiff to the above described adverse employment actions, based on plaintiff's race, color, and in retaliation for Plaintiff's filing of grievances and charges of discrimination, opposing discrimination, and voicing speech of public concern to the media. Defendant COUNTY and DEPARTMENT OF WORKS' conduct, and discriminatory and retaliatory animus, violate Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

39. Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff and African-American workers), from 1988 through the present.

40. As a direct result of said acts, plaintiff WILLIE WARREN has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities,

and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

41. As a result of defendants unlawful acts, plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorneys fees and punitive damages, together in excess of ten million dollars ($10,000,000).

## AS AND FOR A SECOND COUNT
## 42 U.S.C. § 1981

42. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 41 inclusive of this complaint, with the same force and effect as though herein fully set forth.

43.. The above referenced conduct was part of a pattern and practice of discrimination, based on race and color, by Defendants COUNTY OF NASSAU, DEPARTMENT, SUOZZI and GALLO, all of which violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

44. Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff and African-American workers), from 1988 through the present.

45. As a direct result of said acts, plaintiff WILLIE WARREN has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities,

and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

46. As a result of defendants unlawful acts, plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorneys fees and punitive damages, together in excess of ten million dollars ($10,000,000).

## AS AND FOR THE THIRD COUNT
## 42 U.S.C. §1983 - FOURTEENTH AMENDMENT & FIRST AMENDMENT

47. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 46 inclusive of this complaint, with the same force and effect as though herein fully set forth.

48. As set forth in detail by the above allegations, defendants COUNTY OF NASSAU, DEPARTMENT OF WORKS, SUOZZI, and GALLO, acting collectively and individually, have engaged in actions and abuses, discriminatory and retaliatory conduct against Plaintiff in his employment, due to his race, color, opposition to discrimination and speech of public concern.

49. Defendants committed the aforesaid unlawful acts and abuses while acting under color of law, and through the abuse of the authority and power of their individual positions within the defendant COUNTY government.

50. Defendants' infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution, and their retaliation against Plaintiff after he spoke out publicly to the press on matters of systemic discrimination by the COUNTY, was and

is intended to place a chilling effect upon the exercise of Plaintiff's First Amendment right to express speech regarding matters of public concern (i.e., *systemic* discrimination within the COUNTY and DEPARTMENT OF WORKS). Defendants' retaliatory conduct, acts of intimidation and further denial of advancement to Plaintiff after he spoke out on matters of public concern, constituted punishment for expressing protected speech, thus further violating Plaintiff's First Amendment rights.

51. Plaintiff, an African American man, has been treated differently from similarly situated White employees and has been abused and violated because of his race and color.

52. As a direct result of said acts, plaintiff WILLIE WARREN has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

53. Defendants' acts have caused the Plaintiff to suffer and has resulted in diminishing his employment, loss of promotion, and the ability to advancement in his employment.

54. As a result of defendants unlawful acts, plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs, attorneys fees and punitive damages, together in excess of ten million dollars ($10,000,000).

## AS AND FOR A FOURTH COUNT
## 42 U.S.C. §1983 - MUNICIPAL VIOLATIONS:

55. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 54 inclusive of this complaint, with the same force and effect as though herein fully set forth.

56. Defendants COUNTY and DEPARTMENT OF WORKS, acting under color of law, and through their employees, servants, agents and designees, have engaged in a nearly two-decade long course of action and behavior, rising to the level of a policy, custom, and systemic condoned practice, which has deprived Plaintiff and other African-American employees of rights, privileges and immunities secured by the Constitution and by federal statute, in violation of 42 U.S.C. §1983. These actions were and continue to be condoned, adopted and fostered by COUNTY policy makers, including but not limited to, Defendants SUOZZI and GALLO.

57. Defendants, intentionally and knowingly as an act of discrimination based on race, failed to promote the Plaintiff, and African-American employees within the DEPARTMENT OF WORKS, because of their race and color. Defendants COUNTY and DEPARTMENT OF WORKS were further aware of the systemic, widespread practice of unlawful race discrimination within the NASSAU COUNTY DEPARTMENT OF WORKS, yet reacted with deliberate indifference, by failing to address, remedy or change said systemic practices and by defending the pattern and practice of discriminatory denial of promotions and advancements, both against Plaintiff and on a wide scale level.

58. Out of deliberate indifference and / or an unofficial custom and policy, defendants COUNTY and DEPARTMENT OF WORKS failed to adequately train or supervise their higher-level supervisors, as to the discrimination laws and what constitutes an unlawful discriminatory and

/ or retaliatory work environment.

59. As a direct and proximate result of said acts, omissions, indifference and custom and policy established by defendants COUNTY and DEPARTMENT of WORKS, and by policymakers / decision makers SUOZZI and GALLO, Plaintiff suffered and continues to suffer diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment, and damages to his reputation.

60. As a result of Defendants COUNTY and DEPARTMENT OF WORKS' acts, Plaintiff suffered, and is entitled to, damages sustained to date and continuing in excess of ten million dollars ($10,000,000.00), costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

## AS AND FOR A FIFTH COUNT
## NYS EXECUTIVE LAW §296:

61. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 60 inclusive of this complaint, with the same force and effect as though herein fully set forth.

62. The defendants COUNTY OF NASSAU and DEPARTMENT OF PUBLIC WORKS, through their agents and employees, discriminated against the plaintiff in his employment, via denied opportunities for advancement, inequitable pay, a hostile work environment, and unequal terms and conditions of employment, as set forth in the preceding paragraphs.

63. The individual defendants SUOZZI and GALLO, through the actions and conduct set forth in the preceding paragraphs, did aid and abet one another in permitting, condoning, and helping to execute the aforesaid pattern and practice, by COUNTY and DEPARTMENTS OF

WORKS, of race and color based discrimination in employment, denied advancement or job opportunities, inequitable pay, a hostile work environment, and unequal terms and conditions of employment as visited upon Plaintiff, WILLIE WARREN.

64. All of the aforenamed defendants lacked any business reason or justification for their aforesaid disparate treatment of Plaintiff, and instead subjected Plaintiff to the above described adverse employment actions, based on plaintiff's race, color, and in retaliation for Plaintiff's filing of grievances and charges of discrimination, opposing discrimination, and voicing speech of public concern to the media.

65. Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff and African-American workers), from 1988 through the present.

66. As a direct result of said acts, plaintiff WILLIE WARREN has suffered and continues to suffer loss of income, loss of other employment benefits, loss of career opportunities, and has suffered and continues to suffer repeated, severe and permanent psychological, emotional and physical trauma and damage, including distress, humiliation, embarrassment, great financial expense and damage to his reputation, and the emotional and psychological trauma as alleged in the preceding paragraphs of the within complaint.

67. As a result of defendants unlawful acts, plaintiff is entitled to the maximum monetary damages and penalties available by law, including all compensatory damages available under NYS Executive Law Section 296.

68. The above discriminatory pattern and practice of based on race, color and retaliation

by Defendants COUNTY AND DEPARTMENT OF WORKS, their agents and employees, violates New York State Human Rights Law

69. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of status within his employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

70. Because of Plaintiff's race and color he has been subjected to abuse and mistreatment as detailed above and has been treated differently than White individuals in that Plaintiff has been treated as stated herein because of his race and color.

71. As a result of Defendants' acts, plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of ten million dollars ($10,000,000.00).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

a. On the First Count in the sum of ten million ($10,000,000.00) dollars;

b. On the Second Count in the sum of ten million ($10,000,000.00) dollars.

c. On the Third Count in the sum of ten million ($10,000,000.00) dollars;

d. On the Fourth Count in the sum of ten million($10,000,000.00) dollars;

e. On the Fifth Count in the sum of ten million ($10,000,000.00) dollars;

f. Award costs of this action including attorney's fees to the Plaintiff pursuant to 42 U.S.C. § 1988;

g. Plaintiff further seeks a declaratory judgment against defendants COUNTY and DEPARTMENT OF WORKS, stating that their actions were part of a pattern and practice of unlawful, systemic discrimination based on race and color, were

retaliatory, and were a municipal custom, policy and practice that was ongoing and continuous against Plaintiff and against African-American DEPARTMENT OF PUBLIC WORKS employees.

h. Award such other and further relief as this Court may deem appropriate.

Dated: Hempstead, New York
April 16, 2009

        LAW OFFICES OF
        FREDERICK K. BREWINGTON

        By: _____
        FREDERICK K. BREWINGTON (FB-5295)
        *Attorneys for Plaintiff*
        50 Clinton Street, Suite 501
        Hempstead, New York 11550
        Tel: (516) 489-6959

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOCKET NO.:

WILLIE WARREN

Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY
DEPARTMENT OF PUBLIC WORKS, and County
Executive THOMAS R. SUOZZI, in his official capacity,
Highway Maintainers Supervisor, JOHN GALLO,
in his individual and official capacity,

Defendants.

SIMMONS AND COURTLAND
LAW OFFICES
FREDERICK C. BREWINGTON
Attorneys for Plaintiff
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959

FILED
2009 APR 16 PM 10:01
CLERK
U.S. DISTRICT COURT
E.D.N.Y.
AFTER HOURS DROP BOX