UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

WILLIE WARREN,

Docket No.: 06 Civ. 3560 (WFK)

Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY
DEPARTMENT OF PUBLIC WORKS, THOMAS
R. SUOZZI, in his individual and official capacity,
Deputy Commissioner of the Department
of Public Works, RUSSELL RINCHIUSO,
in his individual and official capacity, Personnel
Manager MARION EXXON, in her official and
individual capacity, DOUGLAS CUCCI, in his
individual and official capacity, PAUL YANATANO,
in his individual and official capacity, Highway
Maintenance Supervisor JOHN GALLO, and in
his individual and official capacity.

Docket No. 09 Civ. 1614

Defendants.

-------------------------------------------------------------------X

## DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

Defendants County of Nassau, Nassau County Department of Public Works

("Department"), Thomas R. Suozzi, Paul Yanatano and John Gallo (hereinafter, "Defendants")

respectfully submit this Pre-Trial Memorandum of Law.

### STATEMENT OF FACTS

On April 10, 2003, a Notice of Right to Sue was issued by the Equal Employment

Opportunity Commission ("EEOC") with regard to an EEOC charge which Plaintiff had filed.

*See* Amended Complaint, "Warren I," ¶ 55. On July 3, 2003, Defendants Nassau County and the

Department sent Plaintiff a proposed *Stipulation of Settlement and General Release* ("2003 Stipulation and Release"), wherein Plaintiff would agree to (i) withdraw his State Division of Human Rights ("SDHR") and EEOC charges, and (ii) not commence any civil action against the defendants for the events occurring up to the date of said stipulation, in exchange for certain contractual promises made by Defendants, Warren I, ¶¶ 56-57, including payment of $150,000 and a promotion. Plaintiff signed the 2003 Stipulation and Release on July 5, 2003 and was paid $150,000. Additionally, in August of 2003, in full compliance with the 2003 Stipulation and Release, Defendants arranged for Plaintiff to be transferred to the Department's Hempstead Garage, a different location from the garage at which he had previously worked. The Department also promoted Plaintiff to the position of Equipment Operator III to work as a Sweeper Driver, a position to which he had alleged to have been denied access. Warren I, ¶¶ 25, 61.

On May 14, 2004, notwithstanding the 2003 Stipulation and Release and Defendants' fulfillment of their obligations therein, Plaintiff launched charges of discrimination including retaliation with the SDHR, which was dually filed with the EEOC. After receiving an Administrative Convenience Dismissal from the SDHR and a Right to Sue Letter from the EEOC, Plaintiff filed the 2006 complaint ("Warren I"), which was later amended that year.

In the 2006 complaint, Plaintiff alleged that he was hired as a laborer with the Department on May 20, 1986. See Warren I, ¶ 25 and Warren II, ¶ 16. Plaintiff alleged that from the date of his hire through 2009, he "inquired about, sought and put in for promotions . . . on a regular basis." See Warren I, ¶¶ 27, 28, 39, 40 and Warren II, ¶ 18. Thereafter, in August 2003, pursuant to the 2003 Stipulation and General Release, Plaintiff was promoted to the position of Equipment Operator III and transferred to the Department's Hempstead Garage. See Warren I, ¶¶ 56-61 and Warren II, ¶19. Plaintiff alleged that immediately upon his promotion

and transfer, Defendants continued to treat him disparately. See Warren I, ¶¶ 64-78, Warren II, ¶20-22. Thus, Plaintiff alleged violations of Title VII, 42 U.S.C. §§ 1981, 1983 (First and Fourteenth Amendments and Municipal Violations), §§ 1985 and 1986 (Conspiracy), NYS Executive Law § 296, Breach of Contract, Fraudulent Inducement and Breach of Contract and Alternate Municipal Violations pursuant to 42 U.S.C. § 1983. Discovery in Warren I commenced on May 2, 2007 and was completed on December 15, 2008.

On March 27, 2008, Plaintiff dually filed a complaint with the SDHR and EEOC. After receiving the necessary administrative documents from those agencies, in 2009, Plaintiff instituted a separate action ("Warren II") which essentially comprised the same allegations in Warren I with three exceptions. Annexed as Exhibit "B" is the Warren II Complaint. In paragraph 25 of Warren II, Plaintiff alleges that the "lug nuts on his work vehicle was loosened and or removed in an act of sabotage, retaliation and abuse." In paragraph 27, Plaintiff alleges that Defendants "encourage[ed] unconscionable acts such as display of the hangman's noose and promot[ed] an unlawful discriminatory atmosphere in the workplace and a hostile work environment." Finally in paragraphs 30-32, Plaintiff alleges that he was sent home by Defendant Gallo "without any notice or explanation" and further he was "deprived of his employment and his pay." See Warren II, noted paragraphs.

The causes of action pled by Plaintiff in Warren II include violations of Title VII, 42 U.S.C. §§ 1981, 1983 (First and Fourteenth Amendments and Municipal Violations), and NYS Executive Law § 296.[1] All of these alleged acts took place before March 27, 2008.

---

[1]     Unless Plaintiff can demonstrate that he filed a Notice of Claim under N.Y. General Municipal law § 50(e), his state law claims in the Warren I and Warren II should be dismissed.

More importantly, in paragraph 34, Plaintiff alleges that he sought to amend Warren I but Defendants would not consent to this amendment. What Plaintiff failed to include in paragraph 34 was that, in fact, during the May 8, 2008 conference before Magistrate Judge Orenstein, Plaintiff advised the Court that since Defendants would not consent to a second amendment of the complaint he would move to amend the complaint. See Warren I, DE 24.[2] At no time subsequent to the May 8, 2008 conference, however, did Plaintiff seek leave from this Court to amend Warren I.

Equally important is the fact that all depositions in the Warren I took place in August and September 2008, some five to six months after the acts now alleged in Warren II. Plaintiff elicited testimony from the named Defendants regarding these newly alleged acts during their depositions. Documentation related to the acts alleged in the Warren II has been exchanged and is included in the parties' joint pre-trial order.

---

[2]      Citations demarcated by "DE" refer to the Defendants' exhibits referred to in the parties' Joint Pre-Trial Order.

**DEFENDANTS' DEFENSES**

**POINT I**

**PLAINTIFF WILL NOT PREVAIL ON HIS DISCRIMINATION CLAIMS**

Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims under Title VII are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47 (1993) (*citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093-94 (1981)). To do this, the plaintiff must show (1) that she belonged to a protected class, (2) that she was qualified for the position, (3) that she was subject to an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

If successful, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at

1824. Once this non-discriminatory basis is advanced, the burden shifts back to the plaintiff to prove "'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000) (*quoting Burdine*, 450 U.S. at 253, 101 S.Ct. at 1089). "Although intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"[3] *Id.*

Plaintiff cannot make out a prima facie case of discrimination because as a matter of law he cannot show that he was subject to an adverse employment action. Furthermore, even if he somehow could point to an adverse employment action, Defendants will be able to meet their burden of providing legitimate non-discriminatory reasons for their actions.

---

[3] Claims under the NYHRL, and Sections 1981 and 1983 are evaluated under the same analytic framework. See St. Mary's Honor Ctr., 509 U.S. at 506 n.1, 113 S.Ct. at 2747 n.1 (assuming that the McDonnell Douglas "framework is fully applicable to racial-discrimination-in employment claims under 42 U.S.C. § 1983"); Patterson v. McLean Credit Union, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377-78 (1989) (holding that McDonnell Douglas "framework should apply to claims of racial discrimination under § 1981"); Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n.1 (2d Cir. 1999) ("New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII . . . .").

## POINT II

## PLAINTIFF WAS NOT SUBJECTED TO A
## HOSTILE WORK ENVIRONMENT AS A MATTER OF LAW

"Title VII does not establish a 'general civility code' for the American workplace.

Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely

serious) will not support a claim of discriminatory harassment. *Petrosino v. Bell Atlantic*, 385

F.3d 210, 223 (2d Cir. 2004) (citation omitted). To prove a claim of hostile work environment

harassment, "a plaintiff must produce evidence that 'the workplace is permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

the conditions of the victim's employment.' " *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d

Cir.2000) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295

(1993)). Whether the challenged conduct is sufficiently severe or pervasive "depends on the

totality of the circumstances." *Id.* The Supreme Court in Harris "established a non-exclusive list

of factors," *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir.1999),

*abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct.

2405, 165 L.Ed.2d 345 (2006), to consider in this regard: "(1) the frequency of the

discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or

humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered

with plaintiff's work; and (5) what psychological harm, if any, resulted." *Id. (quoting Harris*, 510

U.S. at 23).

The first two of these factors – the frequency and the severity of the misconduct –

serve as the principal focus of the analysis; the last three factors are specific considerations

within the severity inquiry. *Aulicino v. New York City Dept. of Homeless Services*, 580 F.3d 73, 82 (2d Cir. 2009). In that connection, it is true that "a work environment may be actionable if the conduct there is either so severe or so pervasive as to alter the working conditions of a reasonable employee." *Richardson*, 180 F.3d at 440. Indeed, core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters "blatant racial epithets on a regular if not constant basis" and behaves in a physically threatening manner. *Cruz*, 202 F.3d at 571-72.

Thus ,"[f]or racist comments, slurs, and jokes to constitute a hostile work environment," "there must be more than a few isolated incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir.1997) (internal quotation marks and citation omitted); *see also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir.1992). Overall, "the quantity, frequency, and severity of th[e] slurs [at issue]" are to be "considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp*, 118 F.3d at 110-11 (internal quotation marks and citation omitted).

Here, the alleged occurrences and/or statements reflecting racism were infrequent, isolated, and sporadic, and thus insufficient. They cannot be said to be commonplace, daily, continuous, or a steady barrage as is required. *See Schwapp*, 118 F.3d at 107109 (10 racially hostile incidents during 20 month period); *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) (conduct was so "constant," "almost daily," "habitual," that plaintiff"lost count" with respect to the number of occurrences); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 61 (2d Cir.1992) (approximately 10 months of"numerous" types of comments and gestures taking place on "regular basis" and frequently in front of customers); *Snell v. Suffolk County*, 782 F.2d 1094, 1098 (2d Cir.1986) ( "daily usage of such slurs as 'nigger,' 'coon,' 'black bitch,' and 'spic' " and

"proliferation of racially derogatory 'literature' "); *Walker v. AMR Services Corp.*, 971 F.Supp. 110, 114 (E.D.N.Y.1997) (more than 12 incidents in 2 month span); *Amirmokri v. Baltimore Gas & Electric Co.*, 60 F.3d 1126, 1131-32 (4th Cir.1995) (6 months of daily ethnic and national origin name-calling and epithets).

Nor were any of the alleged occurrences accompanied by a physical threat. Even though "a plaintiff need not endure threatened or actual physical assault before a reasonable fact finder could conclude that she endured "severe" harassment within the meaning of Title VII" (Richardson, 180 F.3d at 440), there must be some basis to create a reasonable inference that the harassment was "severe." *See e.g. Williams v. Consolidated Edison Corp. of N.Y.*, 255 Fed.Appx. 546, 549-50, 2007 WL 4179358 (2d Cir. 2007) ("Although none of the alleged harassment was physically threatening, these incidents were frequent or continuous, interfered with Williams's ability to do her work, and, as to some, were severe."). In that regard, although the Second Circuit has recognized that a singular use of the term, "nigger" can quickly alter the conditions of employment and create an abusive working environment (*see Richardson*, 180 F.3d at 339), the only recognized example by the courts is when that term is used by a supervisor in the presence of his subordinates. *Id, citing Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir.1993).

That is not the case here. Plaintiff will be unable to show the alleged events permeated " 'the workplace ... with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

## POINT III

## THE NEW CLAIMS ARE DUPLICATIVE AND SHOULD BE DISMISSED

The claims alleged in Warren II that are duplicative and should be dismissed. A district court may dismiss an action that is duplicative of another federal court action. *Curtis v. Citibank, N.A.*, 226 F.2d 133, 138 (2d Cir. 2000) *quoting Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). "The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Id.*

"The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or res judicata." *Id.* "The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation.'" *Id.* "The doctrine is also meant to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Id.*

The District Court may, (1) "stay the second suit;" (2) "dismiss it without prejudice;" (3) "enjoin the parties from proceeding with it;" or (4) "consolidate the two actions." Id. The court can also dismiss the second suit "because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendants." *Id.* at 139.

Here, although the two actions have been *de facto* consolidated, the issue of whether Warren I should be dismissed as duplicative has never been adjudicated. The circumstances giving rise to Plaintiff's filing the second action merits a determination that the

claims in Warren II should be dismissed.

Plaintiff filed his first action on July 19, 2006 (amended complaint filed November 19, 2006), and, after advising the Court in May 2008 that he planned to file a motion to amend the complaint for a second time (but failed to do so), Plaintiff filed a new action on April 16, 2009. Warren II is not substantially different from Warren I. To the contrary, the parties in both actions and the claims and relief sought are identical. Furthermore, the factual basis for such claims and relief are virtually the same.

*Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F.Supp2d 161 (E.D.N.Y 2009), is directly applicable. In *Schmueli*, after Magistrate Judge Francis in the Southern District denied plaintiffs leave to bring counterclaims in a pending suit wherein they were defendants, they brought a second action in the Eastern District premised on those same allegations District Judge Glasser dismissed the second action and said, "[h]aving failed, for whatever reason, to assert their counterclaims in one action, plaintiffs may not institute a second action in which those counterclaims become the basis of the complaint." *Id* at 165.

Analogous to the instant matter is Plaintiff's failure, for whatever reason, to file a motion to amend Warren I to include the three discrete allegations now pled in paragraphs 25, 26 and 30 in Warren II. The claims Warren raises in Warren II are matters that should have been raised before the Court in Warren I as properly within the scope of its inherent authority to control the disposition of cases on its docket, including deciding on a motion to amend the complaint (see *Schumuli* at 165), had such a motion been made. *Id* (stating that even if the other judge had not denied the defendants' motion for leave to bring counterclaims, "the policy underpinnings of Rule 13(a) would be called into play[, and h]aving failed, for whatever reason, to assert their counterclaims in one action, plaintiffs may not institute a second action in which

those counterclaims become the basis of the complaint").

Plaintiff's failure to seek leave to amend the first action should not now be rewarded by permitting the continuation of the second action. Therefore, the claims alleged in Warren II that are duplicative and/or untimely should be dismissed in their entirety.


## POINT IV

### PLAINTIFF'S TITLE VII CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

In a state like New York with a fair employment agency, as a prerequisite to filing a civil action in federal court, Title VII requires a claimant to file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") or local equivalent agency within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1); *Pikulin v. City University of New York*, 176 F.3d 598, 599 (2d Cir. 1999); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327 (2d Cir. 1999). This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time barred upon the plaintiff's suit in District Court. *See Butts v. City of New York*, 990 F.2d 1397, 1401 (2d Cir. 1993). The U.S. Supreme Court mandates "strict adherence" to the statute of limitations. *See Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002).

Plaintiff alleges that on March 27, 2008 he dually filed a Charge of Discrimination with the NYSDHR and the EEOC. Accordingly, any alleged conduct that occurred before May 27, 2007 is beyond the 300-day limitations period and is time-barred. This would include Warren's claims of "sabotage, retaliation, and abuse," "failure to conduct any meaningful investigation" and possibly "allowing and encouraging unconscionable acts such as

display of the hangman's noose." See Warren II, ¶¶ 25-27.

Plaintiff claims that in early 2007, the lug nuts on his work vehicle were allegedly loosened and/or removed in an act of sabotage, retaliation and abuse. See Warren II, ¶25. "[E]arly 2007" falls outside of the statute of limitations period, and in any event Plaintiff's allegations are merely conclusory with no specifics as to who, what, where and when this alleged incident occurred. It also appears to be a single discrete incident, as Plaintiff does not mention any other time this occurred within the Warren II complaint.

He then alleges that "on or about 2007 and 2008," Defendants "directly perpetrat[ed], allow[ed], [and] encourage[ed] unconscionable acts such as display of the hangman's noose [] promoting an unlawful discriminatory atmosphere in the workplace and a hostile work environment." See Warren II, ¶ 27. Here, Plaintiff provides no date as to when this alleged incident occurred, instead pleading a broad period of time when it might have occurred in the hopes that it will survive the standards of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), for the level of detail necessary to overcome dismissal and still fall within the Title VII statute of limitations. Notwithstanding this glaring omission of a particular date, Plaintiff does not allege this incident occurred more than once and as such is a single discrete incident.

Plaintiff may not avail himself of the continuing violation doctrine. The continuing violation doctrine will not apply to "discrete acts of discrimination or retaliation that occur outside the statutory time period," i.e., discrete acts will not converge into "a single unlawful practice for the purpose[ ] of timely filing." *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 111-12, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The continuing violation doctrine is a narrow exception disfavored in the Second Circuit and will be applied only upon a

13

showing of compelling circumstances. *Little v. Nat'l Broad. Co.*, 210 F.Supp.2d 330, 366 (S.D.N.Y.2002); *Katz v. Beth Israel Med. Ctr.*, 2001 U.S. Dist. LEXIS 29 (S.D.N.Y. 2001); *Rose v. Port Auth.*, 13 F.Supp.2d 516, 520 (S.D.N.Y.1998).

A hostile work environment claim, unlike a discrete employment action, will be treated as a continuing violation where the claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 134 (2d Cir.2003). "[T]he continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir.2001). A continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act or merely because the claimant continues his or her employment....' " *Marinelli v. Chao*, 222 F.Supp.2d 402, 413 (S.D.N.Y.2002) (*quoting Little v. Nat'l Broad. Co.*, 210 F.Supp.2d 330, 366 (S.D.N.Y.2002) (alteration and omissions in *Marinelli*).

In order to fall within the continuing violation exception, the incidents of harassment "must not be 'isolated and sporadic outbreaks of discrimination,' but a 'dogged pattern.' " *Sunshine v. Long Island Univ.*, 862 F.Supp. 26, 29 (E.D.N.Y.1994), *quoting Bruno v. Western Elec. Co.*, 829 F.2d 957, 961 (10th Cir.1987); *see also Harris v. South Huntington School Dist.*, 2009 WL 875538, *11 (E.D.N.Y. 2009). Plaintiff's citation of three events – the alleged removal of the lug nuts, showcase of the noose and instruction to leave his employment without explanation – does not identify a specific discriminatory policy or mechanism or dogged

pattern. Rather, these occurrences – one of which occurred at an unidentified time (hangman's noose) – are unrelated and disconnected with respect to him.

Since Plaintiff's recitation of discrete allegations fails to establish a continuing violation, the claims arising more than 300 days before he filed his charge – the claim involving the lug nuts and seemingly the hangman's noose – are time-barred and must be dismissed. *See, e.g., Bailey v. Colgate-Palmolive Co.,* 2003 WL 21108325, *9 (S.D.N.Y. 2003) (plaintiff's alleged observation of indicia of racial animosity in 1985, 1986, 1987, 1989, 1990, 1994 and 1995 did not amount to a continuing violation); *Page v. New York City Off-Track Betting Inc.,* 1993 U.S. Dist. LEXIS 14756 at *10 (S.D.N.Y.1993) ("Since [plaintiff] has alleged only discriminatory treatment ... and not discrimination though a discriminatory policy or mechanism, she may not avoid the 300 day limitations period") (internal citation omitted).

## POINT V

### PLAINTIFF'S STATE-LAW CLAIMS MUST BE DISMISSED FOR FAILURE TO FILE A NOTICE OF CLAIM

Plaintiff's causes of action under the New York Executive Law, the Human Rights Law, Section 290 *et seq.* should be dismissed for failure to file a notice of claim in accordance with New York General Municipal Law§§ 50-i and 50-e and N.Y. County Law § 52. N.Y. Gen. Mun. L. 50-e requires that a plaintiff must file a notice of claim prior to commencement of a tort action against a municipality, and must serve the notice of claim within ninety (90) days after the claim arises. Compliance with the notice of claim requirement is a condition precedent to commencement of an action against municipality and the burden is on the plaintiff to plead and prove compliance with the notice of claim requirement. *P.J. Panzeca, Inc. v. Bd. of Educ., Union Free Sch. Dist. No. 6,* 29 N.Y.2d 508, 323 N.Y.S.2d 978, 272 N.E.2d 488

(1971). Section 50-I of the General Municipal Law requires commencement of an action "within one year and ninety days after the happening of the event upon which the claim is based ...".

New York County Law § 52 is broader than its municipal law counterpart in that § 50-e applies only to tort actions. *See Keating v. Gaffney*, 182 F.Supp.2d 278, 290-91 (E.D.N.Y. 2001). Section 52 of the County law provides:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-I of the general municipal law.

Here, Plaintiff was required to serve a notice of claim upon the County within ninety days of the date his SHRL claim arose and to commence an action within one year and ninety days. *See Keating*, 182 F.Supp.2d at 291; *see also Collier v. City of N.Y.*, No. 07 Civ. 532, 2009 WL 464937, at *7 (S.D.N.Y. 2009). That Plaintiff filed a claim with SDHR did not obviate his obligation to comply with the requirements of County Law § 52. Plaintiff's failure to do so warrants dismissal of his state law claims.

## POINT VI

## THERE IS NO VIABLE MONELL CLAIM AGAINST THE COUNTY

Plaintiff will likewise be unable to succeed on his Section 1981 and 1983 claims against the County because they fail to meet the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978), and subsequent cases.

In order to prevail against a municipality on claims under Sections 1981 and 1983, a plaintiff must show that the violation of his constitutional rights was caused by a

16

municipal policy or practice or by the actions of an official who had final policymaking authority in the particular area involved. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-37, 109 S.Ct. 2702, 2723-24 (1989); *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38. Plaintiff has offered no evidence that the Town had a policy or practice of race discrimination in employment. Indeed, Plaintiff has not even alleged facts from which such policy or practice might be inferred. His conclusory allegations are insufficient to support such an inference. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). "'Conclusory allegations by a plaintiff of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent the production of evidence to back up such an allegation.'" *Carter v. City of New York*, 95-CV-3560, 1998 WL 760332, at *5 (E.D.N.Y. 1998) (citation omitted).

   As for any complaint about alleged lack of training, the seminal Supreme Court case addressing a failure to train claim is *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989). Under the holding in that case, Plaintiff must establish that the County's purported failure to train occurred under circumstances that could constitute deliberate indifference, and must also identify the specific deficiency in the County's training program as well as that the deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) (*quoting City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197 (1989)) (plaintiffs must establish that "the officer's shortcomings . . . resulted from . . . a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstances).

   Plaintiff cannot demonstrate any deliberate indifference on the part of the County necessary to support his *Monell* claim. The County had a policy against discrimination which was disseminated to employees. Most important, absent underlying constitutional violation

arising from the acts described by Plaintiff, there was no basis for *Monell* liability against the

County for purported failure to train its employees. *Segal v. City of New York*, 459 F.3d 20 (2d

Cir.2006).

# POINT VII

## THERE IS NO CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985 MANDATING DISMISSAL OF THE CLAIM UNDER 42 U.S.C. § 1986 AS WELL[4]

Mere "conclusory, vague, or general allegations of conspiracy to deprive [one] of

constitutional rights" are insufficient to support a claim under § 1985. *Sommer v. Dixon*, 709

F.2d 173, 175 (2d Cir.1983); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir.2003).

Here, "[p]laintiff fail[ed] to allege a conspiracy involving two or more legal entities," because

"[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single

corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95

(2nd Cir. 2008). Thus, the conspiracy claim must be dismissed and in turn, since a § 1986 claim

must be predicated upon a valid § 1985 claim it should be dismissed as well. Dacey v. Dorsey,

568 F.2d 275, 277 (2d Cir.1978).

---

[4] Unlike the other claims under the Civil Rights statutes, a claim brought pursuant to §
1986, the limitations period is one year. 42 U.S.C. § 1986 (1994). Based on the facts as
presented by plaintiff, this claim would be barred.

## POINT VIII

## THE CLAIM AGAINST THOMAS
## SUOZZI SHOULD BE DISMISSED

Plaintiffs' attempt first claim for relief seeks to impose individual and supervisory liability on Sheriff Sposato for Barber's acts. At the outset, there is no question that "[i]n order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant." *Yant v. Scholack*, 1998 WL 157053, *7 (S.D.N.Y. 1998); *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). A supervisory official cannot be held liable under Section 1983 on a theory of respondeat superior. *Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (*citing Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). Nor may he be held liable merely because he occupies a high position in the chain of command. *Colon*, 58 F.3d at 874. The personal involvement of a supervisory defendant may be shown only by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring. Id. at 873; see also Tierney v. City of New York, 2007 WL 895133, *20 (S.D.N.Y. 2007).

Further, "[b]road, conclusory allegations that a high ranking defendant was

informed of an incident are insufficient to impose liability." *Gibson v. Commissioner of Mental Health*, 2006 WL 1234971, *5 (S.D.N.Y. 2006). The Amended Complaint presents no scenario cognizable under the law which could imposed supervisory liability on Sheriff Sposato. Certainly, there is no allegation that Sheriff Sposato directly participated in the Constitutional violations. Nor is there any allegation that he was informed of the violation through a report or appeal and failed to remedy the wrong. Indeed, mere notice of alleged wrongdoing is insufficient to establish a supervisor's personal involvement. *Gibson,*, 20008 WL 4276208 at *8.

As for the question whether Thomas Suozzi created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, as a matter of law, this claim is not viable based on the language of the complaints in the 2006 and 2009 actions.

While it is true that the complaints in Federal court are governed by the notice pleading standard, a civil rights complaint must still allege facts. *Houghton v. Cardone*, 295 F.Supp.2d 268, 277 (W.D.N.Y. 2003); *See Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir.1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"), *cert. denied*, 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999); *see also Montero v. Travis*, 171 F.3d 757, 761–62 (2d Cir.1999) (claim against parole board chairman was properly dismissed as frivolous because plaintiff "never alleged any facts describing [chairman]'s personal involvement in the claimed constitutional violations") (2d Cir.1999); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice"). Like in Houghton, all that plaintiff has done here is assert the conclusion that the Sheriff was personally involved, with no supporting factual allegations.

Plaintiffs do not set forth any facts that could implicate the establishment of a custom or policy. See, e.g., Pollack v. Nash, 58 F.Supp.2d 294, 300 (S.D.N.Y.1999) (allegation that defendant "permitted the establishment of certain customs which encourage, allow or suffer the prosecution of child abuse cases without sufficient evidence utterly fails to comport with the requirement that a civil rights complaint must contain 'more than mere conclusory allegations,'" and "fails to satisfy the requirement that the defendant in a § 1983 action be personally involved in or actually caused a deprivation of a plaintiff's constitutional rights") (*quoting Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir.1988), and *citing Williams v. Smith*, 781 F.2d at 323, and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Pravda v. City of Albany, N.Y.*, 956 F.Supp. 174, 182 (N.D.N.Y.1997) (conclusory allegations that defendants were responsible for supervising the officers involved in alleged mistreatment of plaintiff, and that they were responsible for setting county policy, were insufficient to establish their personal involvement in alleged constitutional deprivations); *cf. McGrath v. Scott*, 250 F.Supp.2d 1218, 1227–28 (D.Ariz.2003) (complaint adequately alleged personal involvement by supervisory officials where it alleged: specific instances of prior misconduct involving public safety officer; that each official knew of these prior instances of misconduct, yet failed to take sufficient action to prevent officer from using excessive force against plaintiff; provided details of investigation conducted under officials' direction into plaintiff's alleged assault by officer; and alleged that officials were deliberately indifferent to, or condoned, alleged violations).

Moreover, any claim by plaintiffs that Thomas Suozzi displayed deliberate indifference to the constitutional violations alleged begs the question: How could the then County Executive Suozzi display deliberate indifference to acts that even plaintiff has not even

alleged Thomas Suozzi was unaware were taking place? At its core, a deliberate indifference claims turns on what notice did the supervisor have and what action did he take (or fail to take) in response to the information imparted to him. In sum, for a deliberate indifference claim to be viable, a plaintiff must allege that the supervisor knew or should have known that there was a high degree of risk that offending party would behave inappropriately while carryout his duties and either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to the plaintiff. *Poe v. Leonard*, 282 F.3d 123, 141(2d Cir. 2002); *See, e.g., Taylor Indep. Sch. Dist.*, 15 F.3d at 454 (establishing a similar test for supervisory school officials whose subordinate sexually abused a student); *McCann v. Coughlin*, 698 F.2d 112, 125 (2d Cir.1983) (holding that a prison commissioner and superintendent could be held liable for their gross negligence and deliberate indifference to the constitutional rights of inmates, as indicated by their having actual or constructive notice that unconstitutional practices were taking place, and their failure to act on the basis of this information).

Dated:    New York, New York
          July 3, 2013

                                    Respectfully submitted,

                                    MEYER SUOZZI ENGLISH
                                      & KLEINS, P.C.

                    By:

                                    Paul F. Millus (PM-8240)
                                    990 Stewart Avenue
                                    Garden City, New York 10530
                                    (516) 592-5933

                                    Attorneys for Defendants