UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WILLIE WARREN,                                                    Docket No.: 06 Civ. 3560

                                    Plaintiff,

                                                                 Docket No.: 09 Civ. 1614
            -against-

COUNTY OF NASSAU, NASSAU COUNTY
DEPARTMENT OF PUBLIC WORKS, THOMAS
R. SUOZZI, in his individual and official capacity,
Deputy Commissioner of the Department
of Public Works, RUSSELL RINCHIUSO,
in his individual and official capacity, Personnel
Manager MARION EXXON, in her official and
individual capacity, DOUGLAS CUCCI, in his
individual and official capacity, PAUL YANANTUONO,
in his individual and official capacity, Highway
Maintenance Supervisor JOHN GALLO, and in
his individual and official capacity.

                                    Defendants.

-------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50(B) AND 59**

**MEYER, SUOZZI, ENGLISH & KLEIN, P.C.**
**Paul F. Millus**
**Attorneys for Defendants**
**990 Stewart Avenue, Suite 300**
**P.O. Box 9194**
**Garden City, New York 11530-9194**
**(516) 741-6565**

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

THE STANDARD OF REVIEW ............................................................................................ 1

POINT I.
   PLAINTIFF COULD NOT PREVAIL ON HIS DISCRIMINATION CLAIMS ....................... 3

    A.  There was Insufficient Evidence to Support a Hostile Work Environment Claim ........... 3

    B.  Plaintiff's Failure to Promote Claims were Meritless ...................................................... 8

    C.  Plaintiff's Termination Claim Was Contrary to Any Evidence Presented at Trial .......... 11

    D.  Plaintiff Cannot Establish a Claim of Retaliation ........................................................... 11

POINT II.
   MR. WARREN'S BREACH OF CONTRACT CLAIM
   IS NOT BASED ON ANY COMPETENT AUTHORITY ........................................................ 12

POINT III.
   THERE IS NO VIABLE MONELL CLAIM AGAINST THE COUNTY ................................. 13

POINT IV.
   THERE IS NO CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985 MANDATING
   DISMISSAL OF THE CLAIM UNDER 42 U.S.C. § 1986 AS WELL ..................................... 14

POINT V.
   THE CLAIM AGAINST THOMAS SUOZZI SHOULD HAVE BEEN DISMISSED ............. 15

POINT VI.
   THE FRAUDULENT INDUCEMENT CLAIM IS MERITLESS ........................................... 16

CONCLUSION ........................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amirmokri v. Baltimore Gas & Electric Co.*,
 60 F.3d 1126 (4th Cir. 1995) ...................................................................6

*Amnesty America v. Town of West Hartford*,
 361 F.3d 113 (2d Cir. 2004).................................................................14

*Arar v. Ashcroft*,
 585 F.3d 559 (2d Cir. 2009) *cert. denied by* 130 S.Ct. 3409...................14

*Aulicino v. New York City Dept. of Homeless Services*,
 580 F.3d 73 (2d Cir. 2009).................................................................5, 9

*Brown v. Coach Stores, Inc.*,
 163 F.3d 706 (2d Cir. 1998).................................................................10

*Burlington N. & Santa Fe Ry. Co. v. White*,
 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)........................5, 11

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
 243 F.3d 93 (2d Cir. 2001)....................................................................9

*Carter v. City of New York*,
 95-CV-3560, 1998 WL 760332 (E.D.N.Y. 1998) ...................................13

*City of Canton*,
 489 U.S. at 391, 109 S.Ct. 1197 (1989)..............................................13, 14

*Colon v. Coughlin*,
 58 F.3d 865 (2d Cir. 1995)..................................................................15

*Cruz v. Coach Stores, Inc.*,
 202 F.3d 560 (2d Cir. 2000)...............................................................5, 7

*Dacey v. Dorsey*,
 568 F.2d 275 (2d Cir. 1978).................................................................14

*Deerfield Comms. Corp. v. Chesebrogh Ponds, Inc.*,
 68 N.Y.2d 954 (1986) .........................................................................16

*Dwares v. City of New York,*
   985 F.2d 94 (2d Cir. 1993)................................................................13

*Galdieri-Ambrosini v. National Realty & Dev. Corp.,*
   136 F.3d 276 (2d Cir. 1998)...........................................................1, 2

*Gan v. City of New York,*
   996 F.2d 522 (2d Cir. 1993)................................................................15

*Gibson v. Commissioner of Mental Health,*
   2006 WL 1234971 (S.D.N.Y. 2006)......................................................15

*Harris v. Forklift Sys., Inc.,*
   510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)..........................5, 7

*Hartline v. Gallo,*
   546 F.3d 95 (2d Cir. 2008)................................................................14

*Hollander v. Am. Cyanamid Co.,*
   172 F.3d 192 (2d Cir. 1999)................................................................9

*Jett v. Dallas Indep. Sch. Dist.,*
   491 U.S. 701, 109 S.Ct. 2702 (1989)..................................................13

*Kaytor v. Elec. Boat Corp.,*
   609 F.3d 537 (2d Cir. 2010)................................................................11

*Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,*
   957 F.2d 59 (2d Cir. 1992)................................................................6

*Leopold v. Baccarat, Inc.,*
   174 F.3d 261 (2d Cir. 1999)................................................................4

*Lomotey v. State of Conn. – Dep't of Transp.,*
   355 F. App'x 478 (2d Cir. 2009) ..........................................................9

*Luciano v. Olsten Corp.,*
   110 F.3d 210 (2d Cir. 1997)................................................................10

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792, 93 S. Ct. 1817 (1973)..............................................3, 4, 10

*Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,*
   290 F.3d 98 (2d Cir.2002)..............................................................2, 3

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658, 98 S.Ct. 2018 (1978) ............................................................13, 14, 15

*Patterson v. Cnty. of Oneida*,
    N.Y., 375 F.3d 206, 225 (2d Cir.2004) ....................................................................3

*Patterson v. McLean Credit Union*,
    491 U.S. 164, 109 S.Ct. 2363 (1989) .......................................................................4

*Petrosino v. Bell Atlantic*,
    385 F.3d 210 (2d Cir. 2004) .....................................................................................4

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133, 120 S.Ct. 2097 (2000) ...............................................................1, 2, 4

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
    180 F.3d 426 (2d Cir. 1999) .............................................................................5, 6, 7

*Rodgers v. Western-Southern Life Ins. Co.*,
    12 F.3d 668 (7th Cir. 1993) ......................................................................................7

*Roge v. NYP Holdings, Inc.*,
    257 F.3d 164 (2d Cir. 2001) .....................................................................................4

*Schwapp v. Town of Avon*,
    118 F.3d 106 (2d Cir. 1997) .................................................................................5, 6

*Segal v. City of New York*,
    459 F.3d 20 (2d Cir.2006) ......................................................................................14

*Shannon v. Fireman's Fund Ins. Co.*,
    156 F.Supp.2d 279, 293 (S.D.N.Y. 2001) ..............................................................2

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir.2001) ........................................................................................9

*Snell v. Suffolk County*,
    782 F.2d 1094 (2d Cir. 1986) ...................................................................................6

*Sommer v. Dixon*,
    709 F.2d 173 (2d Cir. 1983) ...................................................................................14

*Song v. Ives Labs., Inc.*,
    957 F.2d 1041 (2d Cir. 1992) ...................................................................................2

*Spellman v. Columbia Manicure Mfg. Co., Inc.*,
    111 A.D.2d 320, 498 N.Y.S.2d 304 (2d Dep't 1985) ..............................................16

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502, 113 S. Ct. 2742 (1993)..................................................................3, 4

*Texas Dep't of Community Affairs v. Burdine*,
    450 U.S. 248, 101 S. Ct. 1089 (1981)...........................................................3, 4, 10

*Tierney v. City of New York*,
    2007 WL 895133 (S.D.N.Y. 2007).........................................................................15

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001).......................................................................................1

*Torres v. Pisano*,
    116 F.3d 625 (2d Cir. 1997)....................................................................................6

*U.S. East Telecommunications, Inc. v. US West Communications Servs., Inc.*,
    38 F.3d 1289, 1301 (2d Cir. 1994)..........................................................................2

*Walker v. AMR Services Corp.*,
    971 F.Supp. 110 (E.D.N.Y.1997) ...........................................................................6

*Wall v. CSX Transportation, Inc.*,
    471 F. 3d 410 (2d Cir. 2006)..................................................................................16

*Webb v. Goord*,
    340 F.3d 105 (2d Cir.2003)....................................................................................14

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994).....................................................................................15

*Yant v. Scholack*,
    1998 WL 157053 (S.D.N.Y. 1998).........................................................................15

**STATUTES**

42 U.S.C. § 1981................................................................................................3, 4, 13

42 U.S.C. § 1983................................................................................................3, 4, 15

42 U.S.C. § 1985.......................................................................................................14

42 U.S.C. § 1986.......................................................................................................14

42 U.S.C. § 2000e-2(a)(1) ............................................................ *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 50(a) ...................................................................... 1

Fed. R. Civ. P. 50(b) ...................................................................... 1

## PRELIMINARY STATEMENT

Defendants County of Nassau, Nassau County Department of Public Works ("DPW"), Thomas R. Suozzi, Paul Yanantuono and John Gallo (hereinafter, "Defendants") respectfully submit this MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50(B) AND 59. There is no basis as a matter of law to grant plaintiff any post trial relief from the jury's verdict in this matter. The jury was not denied any evidence in this case that was even remotely relevant to the issues presented to it (whether objected to or not). Despite having this abundance of evidence presented by plaintiff over seven (7) full days of trial and much it is extremely favorable to plaintiff's claims, the jury rejected in wholesale fashion each of the claims presented to it.

## THE STANDARD OF REVIEW

Under FRCP 50(a), "a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 2109 (2000) (*quoting* Fed. R. Civ. P. 50(a)). The same standard applies to a Rule 50(b) renewed motion for judgment as a matter of law. *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001). A motion under either section may be granted if "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). This means that: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant

that reasonable and fair minded [persons] could not arrive at a verdict against [it].Id. (citations omitted) (alteration in original). In deciding such a motion, the court "may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150, 120 S.Ct. at 2110. Although the court "must disregard all evidence favorable to the moving party that the jury is not required to believe," it should "give credence to the . . . 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151, 120 S.Ct. at 2110 (citation omitted).

A motion for a new trial is assessed under a less stringent standard than that which applies to a motion for judgment as a matter of law. *Shannon v. Fireman's Fund Ins.* Co., 156 F.Supp.2d 279, 293 (S.D.N.Y. 2001). A court may grant such a motion if "it is convinced 'that the jury has reached a "seriously erroneous result" or that the verdict is . . . against the weight of the evidence.'" *U.S. East Telecommunications, Inc. v. US West Communications Servs., Inc.*, 38 F.3d 1289, 1301 (2d Cir. 1994) (citation omitted). Unlike a judgment as a matter of law, "a new trial may be granted even if there is substantial evidence to support the jury's verdict." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). Moreover, "a trial judge hearing a motion for a new trial 'is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.'" *Id.* (citation omitted).

The Second Circuit has made it clear that "[w]e will reverse the denial of judgment as a matter of law only if, notwithstanding making all credibility assessments and drawing all inferences in favor of [the non-moving party], a reasonable juror would be <u>compelled to accept</u> the view of [the moving party]." (emphasis added) *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 109 (2d Cir.2002) (internal quotation marks and citations omitted)

and "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Medforms,* 290 F.3d at 106. The verdict was more than sound and should not be disturbed.

## POINT I.

### PLAINTIFF COULD NOT PREVAIL ON HIS DISCRIMINATION CLAIMS

**A.** **There was Insufficient Evidence to Support a Hostile Work Environment Claim**

Title VII, and pursuant to case law – claims under the New York State Human Rights Law, 42 U.S.C. 1981 and 1983, make it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1*). See Patterson v. Cnty. of Oneida,* N.Y., 375 F.3d 206, 225 (2d Cir.2004) ( Hostile work environment claims, whether under 42 U.S.C. § 1981 or the New York Human Rights Law ("NYHRL"), can be analyzed pursuant to the core substantive standards that apply to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*).

Claims under Title VII are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47 (1993) (*citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093-94 (1981)). To do this, the plaintiff must show (1) that she belonged

to a protected class, (2) that she was qualified for the position, (3) that she was subject to an adverse employment action, and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

If successful, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once this non-discriminatory basis is advanced, the burden shifts back to the plaintiff to prove "'that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000) (*quoting Burdine*, 450 U.S. at 253, 101 S.Ct. at 1089). "Although intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"[1] *Id.*

"Title VII does not establish a 'general civility code' for the American workplace. Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment. *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) (citation omitted). To prove a claim of hostile work environment harassment,

---

[1] Claims under the NYHRL, and Sections 1981 and 1983 are evaluated under the same analytic framework. *See St. Mary's Honor Ctr.*, 509 U.S. at 506 n.1, 113 S.Ct. at 2747 n.1 (assuming that the *McDonnell Douglas* "framework is fully applicable to racial-discrimination-in employment claims under 42 U.S.C. § 1983"); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377-78 (1989) (holding that *McDonnell Douglas* "framework should apply to claims of racial discrimination under § 1981"); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999) ("New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII . . . .").

"a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Whether the challenged conduct is sufficiently severe or pervasive "depends on the totality of the circumstances." *Id.* The Supreme Court in Harris "established a non-exclusive list of factors," *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), to consider in this regard: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Id. (quoting Harris*, 510 U.S. at 23).

The first two of these factors – the frequency and the severity of the misconduct – serve as the principal focus of the analysis; the last three factors are specific considerations within the severity inquiry. *Aulicino v. New York City Dept. of Homeless Services*, 580 F.3d 73, 82 (2d Cir. 2009). In that connection, it is true that "a work environment may be actionable if the conduct there is either so severe or so pervasive as to alter the working conditions of a reasonable employee." *Richardson*, 180 F.3d at 440. Indeed, core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters "blatant racial epithets on a regular if not constant basis" and behaves in a physically threatening manner. *Cruz*, 202 F.3d at 571-72.

Thus ,"[f]or racist comments, slurs, and jokes to constitute a hostile work environment,"

5

"there must be more than a few isolated incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997) (internal quotation marks and citation omitted); *see also Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62 (2d Cir. 1992). Overall, "the quantity, frequency, and severity of th[e] slurs [at issue]" are to be "considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp*, 118 F.3d at 110-11 (internal quotation marks and citation omitted).

Here, aside from the fact that plaintiff's testimony was incredible at times, the alleged occurrences and/or statements reflecting racism were isolated, and sporadic, and thus insufficient to support a claim. They could not be said to be commonplace, daily, continuous, or a steady barrage as is required. *See Schwapp*, 118 F.3d at 107109 (10 racially hostile incidents during 20 month period); *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) (conduct was so "constant," "almost daily," "habitual," that plaintiff "lost count" with respect to the number of occurrences); *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 61 (2d Cir. 1992) (approximately 10 months of "numerous" types of comments and gestures taking place on "regular basis" and frequently in front of customers); *Snell v. Suffolk County*, 782 F.2d 1094, 1098 (2d Cir. 1986) ("daily usage of such slurs as 'nigger,' 'coon,' 'black bitch,' and 'spic'" and "proliferation of racially derogatory 'literature'"); *Walker v. AMR Services Corp.*, 971 F.Supp. 110, 114 (E.D.N.Y.1997) (more than 12 incidents in 2 month span); *Amirmokri v. Baltimore Gas & Electric Co.*, 60 F.3d 1126, 1131-32 (4th Cir. 1995) (6 months of daily ethnic and national origin name-calling and epithets).

Although the Second Circuit has recognized that a singular use of the term, "nigger" can quickly alter the conditions of employment and create an abusive working environment (*see*

*Richardson*, 180 F.3d at 339), the only recognized example by the courts is when that term is used by a supervisor in the presence of his subordinates. *Id, citing Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993).

That is not the case here. Plaintiff could not show the alleged events permeated " 'the workplace ... with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.' " *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

In this case the hostile work environment consisted of (i) Mr. Warren allegedly being subjected to racial epithets by Douglas Cucci in 2003 and 2004; (ii) the lug nuts on Mr. Warren's vehicle in August 2006, purportedly being loosened; and (iii) a noose was purportedly placed in Mr. Warren's work area in November 2007. In regard to the allegations against Mr. Cucci, despite Mr. Warren's statements that Mr. Cucci repeatedly used the word "nigger" and directing it at Mr. Warren during his presence, no other witness supported Mr. Warren's version of events. In fact, two fellow African-American employees testified regarding their observations of Mr. Cucci in the workplace and only one of them stated that on <u>one</u> occasion he heard Mr. Cucci use the word "nigger" after a confrontation had occurred between Mr. Warren and Mr. Cucci. While the word itself may be deplorable, there was more than sufficient evidence for the jury to believe that the alleged discriminatory conduct was anything but pervasive and continuous. In fact, Mr. Warren testified that other than these three incidents, including the period from August of 2003 to sometime in April of 2004, he was not exposed to racial animus in the workplace in terms of racially charged language. In light of this, the jury's finding that no hostile work environment

existed was amply supported by the evidence presented at trial.

In regard to the isolated acts of alleged harassment, namely the loosening of the lug nuts and the placement of the noose, again, the jury had ample evidence to reject these actions as evidence of a hostile work environment. As for the lug nuts, it was clear that an investigation was performed and there is no competent evidence to suggest that the lug nuts were loosened purposefully and/or that it was directed at Mr. Warren based on his race. Likewise, in regard to the noose, the jury certainly could have believed that the noose was placed there by Mr. Warren considering his proximity to the location, his presence at the DPW's yard at that time of the day, and the fact that there had been a spate of noose incidences in and around the New York area, and particular Nassau County, predating the noose found by Mr. Warren's coworker. Indeed, the jury had ample support to believe that Mr. Warren was manipulating the system by attempting to create incidences of racial discrimination to further support his claims that his mental health had deteriorated to the point that warranted his receiving a disability retirement. Based on the evidence adduced at trial, there is no question that the jury's verdict that no hostile work environment existed was supportable by that evidence and, indeed, it may be argued overwhelmingly supportable.

**B.**     **Plaintiff's Failure to Promote Claims were Meritless**

As there was no legal basis in this case for the jury to consider any promotion claim predating the settlement that plaintiff accepted on July 28, 2003, the only claims he could possibly make regarding a failure to promote him based on his race had to occur after the settlement.

Title VII makes it unlawful for an employer to "fail or refuse to hire ... or otherwise to

discriminate against any individual ... because of such individual's race, color, [or] ... national origin." 42 U.S.C. 2000e-2(a)(1). A plaintiff asserting a Title VII discrimination claim based on a failure to promote establishes a *prima facie* case by showing that at the relevant time: (i) the plaintiff was a member of a protected class; (ii) the plaintiff applied for and was qualified for the job; (iii) the plaintiff was rejected for the position; and (iv) the rejection of the plaintiff's application occurred under circumstances giving rise to an inference of discrimination. A*ulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir.2009). A *prima facie* case gives rise to a presumption of unlawful discrimination, and the burden of production then shifts to the defendant to proffer a "legitimate, nondiscriminatory reason" for the challenged employment action. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir.2001). If a proper reason is advanced, the presumption of discrimination drops out and "the final burden rests on the plaintiff to prove ... that the proffered nondiscriminatory reason was pretextual...." Id. Here, the jury properly rejected the failure to promote claim. First, Warren's stated qualifications do not establish that his credentials were, in any instance, so superior to the still unknown person selected for promotion so as to make the selection of that person unreasonable, as we have required for a credentials-based finding of pretext. *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir.2001). In addition, Warren's bald allegation that the DPW favored Caucasian employees by giving them better opportunities that would facilitate promotion was not supported by sufficient evidence. Warren's contentions that only Caucasians were selected for these positions "amounts to nothing more than raw numbers which, without further information on key considerations such as the racial composition of the qualified labor pool, cannot support an inference of discrimination." *Lomotey v. State of Conn. – Dep't of Transp.,*

355 F. App'x 478, 480 (2d Cir.2009). *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 203 (2d Cir. 1999) (abrogated on other grounds); *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997).

Moreover, in the context of a promotion, the Supreme Court noted in *McDonnell* that "in establishing a *prima facie* case the plaintiff must show that '[he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) *(quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Here, Mr. Warren's own testimony demonstrated that he applied for only one position as a promotional opportunity between August 2003 and March 2008. *See* Exhibit "A" consisting of Mr. Warren's trial testimony.

In connection with the one position he apparently applied for, he could not even testify as to who received the promotion. Mr. Warren had an obligation to demonstrate, by direct comparison to a similarly situated individual, that he was as qualified or more qualified than the individual promoted instead of him which he did not do. There was simply no evidence presented at trial which could support a failure to promote claim in this case. Oblique references to other individuals who were purportedly promoted during Mr. Warren's tenure cannot satisfy the burden placed upon him by the law to demonstrate his qualifications for the position, the lack of qualifications of the individual promoted, and the presence of race as a motivating factor in connection with his failure to promote claim. Also, insofar as the failure to promote claim is concerned, a failure to promote is a distinct claim for purposes of a discrimination action. Significantly, nowhere in Mr. Warren's filings for the Division of Human Rights in 2004 and

2008, did Mr. Warren claim that he was discriminated against based upon a failure to promote. Thus, those claims are not preserved for the purposes of Mr. Warren's Title VII claim against Nassau County.

## C.    Plaintiff's Termination Claim Was Contrary to Any Evidence Presented at Trial

Mr. Warren claims that an adverse employment action which occurred to him was that he was terminated. However, it was clear by the evidence presented at trial that Mr. Warren was not terminated. While one may quibble about the level of communication between DPW and Mr. Warren concerning the order given to him to leave the work area and not return until such time that he was prepared for full duty, Mr. Warren's own doctors admitted that, at the time that Mr. Warren was sent home, he was completely incapacitated and unable to perform his function. With that, any claim by Mr. Warren that he was unlawfully terminated was purely ludicrous and unsupportable by the evidence.

## D.    Plaintiff Cannot Establish a Claim of Retaliation

A retaliation *prima facie* case required Mr. Warren to "show (1) that [he] participated in an activity protected by Title VII, (2) that [his] participation was known to [his] employer, (3) that [his] employer thereafter subjected [him] to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 552 (2d Cir. 2010). The determination of whether an employment action is "materially adverse" is an objective one; such an action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 555 (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006))

Mr. Warren's retaliation claim was non-existent. To the extent it related to a failure to promote claim, as demonstrated *supra*, such a claim was unsupportable by the evidence. Moreover, to the extent the retaliation came in the form of a failure to investigate Mr. Warren's claims of discrimination, it was clear that, while the investigation may not have been as satisfactory as one would like into Mr. Warren's claims against Douglas Cucci, there was an investigation performed. Indeed, when looking at Mr. Warren's complaint of discrimination, other than a generalized reference to Mr. Cucci not showing respect for minority workers, Mr. Warren did not even state in his complaint that Mr. Cucci had used the word "nigger" in the workplace on numerous occasions which, of course, has been demonstrated to be unsupported by the evidence. The jury was right to reject these claims in full.

## POINT II.

### MR. WARREN'S BREACH OF CONTRACT CLAIM
### IS NOT BASED ON ANY COMPETENT AUTHORITY

Mr. Warren's claims that the County somehow breached a "contract" with him by not abiding by its anti-discrimination policy is a claim that finds no support in the law. While this claim was permitted to go to the jury, plaintiff cannot cite to even one competent authority that supports the argument that the existence of an anti-discrimination policy and a corresponding claim of discrimination implicates the existence of a breach of contract claim based on a failure to prevent discrimination. That is why there are laws like Title VII, 42 U.S.C. §§ 1981 and 1983 and the New York State Human Rights Law. They exist to remedy claims of discrimination in the workplace. Nowhere in the law is there support for a claim of breach of contract by virtue of the fact that a plaintiff alleges discrimination in violation of an anti-discrimination policy. The claim was ludicrous then and it is ludicrous now as a matter of law.

## POINT III.

## THERE IS NO VIABLE MONELL CLAIM AGAINST THE COUNTY

Plaintiff could not succeed on his Section 1981 and 1983 claims against the County because they failed to meet the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978), and subsequent cases.

In order to prevail against a municipality on claims under Sections 1981 and 1983, a plaintiff must show that the violation of his constitutional rights was caused by a municipal policy or practice or by the actions of an official who had final policymaking authority in the particular area involved. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-37, 109 S.Ct. 2702, 2723-24 (1989); *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38. Plaintiff has offered no evidence that the Town had a policy or practice of race discrimination in employment. Indeed, Plaintiff has not even alleged facts from which such policy or practice might be inferred. His conclusory allegations are insufficient to support such an inference. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). "'Conclusory allegations by a plaintiff of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent the production of evidence to back up such an allegation.'" *Carter v. City of New York*, 95-CV-3560, 1998 WL 760332, at *5 (E.D.N.Y. 1998) (citation omitted).

As for any complaint about alleged lack of training, the seminal Supreme Court case addressing a failure to train claim is *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989). Under the holding in that case, Plaintiff must establish that the County's purported failure to train occurred under circumstances that could constitute deliberate indifference, and must also identify the specific deficiency in the County's training program as well as that the

deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) (*quoting City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197 (1989)) (plaintiffs must establish that "the officer's shortcomings . . . resulted from . . . a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstances).

Plaintiff cannot demonstrate any deliberate indifference on the part of the County necessary to support his *Monell* claim. The County had a policy against discrimination which was disseminated to employees. Most important, absent underlying constitutional violation arising from the acts described by Plaintiff, there was no basis for *Monell* liability against the County for purported failure to train its employees. *Segal v. City of New York*, 459 F.3d 20 (2d Cir.2006).

## POINT IV.

### THERE IS NO CONSPIRACY CLAIM UNDER 42 U.S.C. § 1985 MANDATING DISMISSAL OF THE CLAIM UNDER 42 U.S.C. § 1986 AS WELL

Mere "conclusory, vague, or general allegations of conspiracy to deprive [one] of constitutional rights" are insufficient to support a claim under § 1985. *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir.2003).

Here, "[p]laintiff fail[ed] to allege a conspiracy involving two or more legal entities," because "[u]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Hartline v. Gallo*, 546 F.3d 95 (2d Cir. 2008). Thus, the conspiracy claim must be dismissed and in turn, since a § 1986 claim must be predicated upon a valid § 1985 claim it should be dismissed as well. *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978). There was no evidence that any defendant entered

14

into any agreement, express or tacit, to achieve an unlawful end (*see Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir. 2009) *cert. denied by* 130 S.Ct. 3409, 1) making neither of these claims viable.

## POINT V.

## THE CLAIM AGAINST THOMAS SUOZZI SHOULD HAVE BEEN DISMISSED

"[i]n order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant." *Yant v. Scholack,* 1998 WL 157053, \*7 (S.D.N.Y. 1998); *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994). A supervisory official cannot be held liable under Section 1983 on a theory of respondent superior. *Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir. 1993) (*citing Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). Nor may he be held liable merely because he occupies a high position in the chain of command. *Colon,* 58 F.3d at 874. The personal involvement of a supervisory defendant may be shown only by evidence that (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring. *Id.* at 873; *see also Tierney v. City of New York,* 2007 WL 895133, \*20 (S.D.N.Y. 2007).

Further, "[b]road, conclusory allegations that a high ranking defendant was informed of

an incident are insufficient to impose liability." *Gibson v. Commissioner of Mental Health*, 2006 WL 1234971, *5 (S.D.N.Y. 2006). The evidence was overwhelmingly in favor of the defendants on this issue.

## POINT VI.

## THE FRAUDULENT INDUCEMENT CLAIM IS MERITLESS

Insofar as the breach of contract claim is concerned, plaintiff contends that Thomas Suozzi promised him specifically that plaintiff would not be subjected to discrimination in the future if he were to sign the agreement. Obviously, defendants contested this version of events and Mr. Suozzi has made it plainly clear that such a promise never took place. The jury had more than enough reasons to believe Mr. Suozzi. The New York State Court of Appeals has held in *Deerfield Comms. Corp. v. Chesebrogh Ponds, Inc.*, 68 N.Y. 2d 954 (1986) that "a promise [not contained in the agreement] made with a preconceived and undisclosed intention of not performing it constitutes a misrepresentation" for purposes of fraud in the inducement cause of action. *Wall v. CSX Transportation, Inc.*, 471 F. 3d 410 (2d Cir. 2006). It is defendants' contention that there was no evidence before this jury that Thomas Suozzi had such a preconceived and undisclosed intention of not performing the purported promise made to plaintiff. As defendants argued in their motion to dismiss plaintiff's case and at the close of the plaintiff's presentation of evidence, plaintiff's claim is more akin to alleging fraud in futuro which is not actionable in the state of New York. *Spellman v. Columbia Manicure Mfg. Co., Inc.*, 111 A.D.2d 320, 324, 498 N.Y.S.2d 304, 308 (2d Dep't 1985) ("failure to fulfill promises to perform acts in the future is a breach of contract.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion should be denied in its entirety.

Dated: Garden City, New York
      August 23, 2013

               Respectfully submitted,

               MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

               By:_____
                   Paul F. Millus (PM-8240)
               990 Stewart Avenue, Suite 300
               P.O. Box 9194
               Garden City, New York 10530
               (516) 592-5933

               *Attorneys for Defendants*

Of Counsel:

    Paul F. Millus

955823